Mr. McGivern, I just want to make sure I have the right case and the right lawyer. Kind of you're not going to New Orleans to get off this plane. All right, you may proceed. Brian McGivern Your Honor, good morning and may it please the court. Of course, I'm Brian McGivern here on behalf of the Prison Justice League. The issue presented in this appeal is about associational standing, but I think the real conflict boils down to the Eighth Amendment, what it protects and how do you prove a claim. Under the Eighth Amendment, it is unconstitutional to force an inmate to be exposed to a substantial risk of serious harm. Being exposed to that substantial risk of serious harm is unconstitutional even if no harm has yet befallen that inmate. The Prison Justice League's allegation in this lawsuit is that inmates in the Estelle prison unit in general, but including the 100 members of PJL who are in that unit, face a substantial risk of serious harm as a direct result of the way that the warden of that prison runs it and the fact that she is exercising deliberate indifference with regard to the way that officers are systemically using force, force in a way that is not required to maintain or restore discipline. Now, for associational standing, the third prong which we're faced with, the question is whether or not the Prison Justice League, in order to demonstrate that risk, is required to draw on a significant individual participation of its members. The answer is no, it is not required. It does not need to draw on significant participation of its members in order to achieve that claim for at least two reasons. The first is I believe the claim, at least plausibly, could be proved by looking exclusively to documents of witnesses that are within the defendant's control. And if that's true, it wouldn't necessarily require the participation of any members beyond showing that there are members who themselves have standing, which is a different prong of the test. When I originally got this case, what I envisioned was doing discovery to get copies of use of force reports, they're voluminous, to get videotapes from TDCJ, to get copies of grievances and other similar documents, all of which are within the defendant's control, and to take those and to submit them to the review of experts, other people with expertise in the field of corrections. And what I anticipate those experts' testimony would be after reviewing that evidence is that as a consequence of the way that the warden runs the prison, and the fact that she does not discipline officers for exceeding what are clear constitutional mandates, but also TDCJ's own procedures which are about only using force to the degree necessary to maintain or restore discipline, that as a result of the way she runs the prison and does not keep her officers in line, that inevitably that does create a risk of significant harm to the inmates, and has in fact done so here. So that's the first reason why I believe that the claim can be proven without significant participation of the members. So your first argument is you can't decide associational standing at this dismissal stage. You'd have to have discovery to find out if it's a policy, therefore no need to look at individual provocation, et cetera. Is that essentially it? I would say yes, more precisely, though. I believe that the allegations at this stage set forth a plausible basis for showing that we could establish those claims without relying on significant participation of PJL's members. But you're conceding that you have to rely on things that you don't yet have, because you have to get those from the defendants. And then you've got to speculate about what may be contained in documents and videotapes when you get it. Well, no, I don't believe that that's the exclusive way that we can establish that claim. But at the extreme end, I mean, with regard to the third element of associational standing, I think at least it's plausible to believe that it could be established by looking exclusively at documents within there. Any associational standing case granted in a use of force context where the courts ultimately have to discipline, or was it malicious? I'm not aware of a case on associational standing that's on all four points like that, though I do believe that the associational standing cases that exist, which have been cited in the briefing, are not dissimilar. None of them regard prisons, I'll grant you. That's a problem, because wouldn't Eighth Amendment claims require that individualized look? Except when you move it into this atmosphere of just a policy of deliberate indifference. But even there, you would have to have shown that the warden was overlooking complaint after complaint. There was enough incidence that there was a policy, and that doesn't exist here. Let's say maybe or maybe not, and this does get into the second point that I was going to make. Even if you assume that in order to predict the future, and let me just be clear, I think that an inmate who just arrived at the unit a day before this lawsuit was filed, if they had access to this information to understand the risk they were in, would have a basis for seeking injunctive relief against the risk that they were facing. It's not about the individual sort of filing it, whether or not they have themselves suffered an injury at that juncture, separate from facing a substantial risk of serious harm, which is not entirely unlike the case law like Helling v. McKinney, talking about how exposure to a contagious disease. Let me ask you a question about the Prison Justice League. You describe yourself as a membership-based, nonprofit organization. What is your membership? The Prison Justice League is a 501c3 nonprofit. Utah Couple. Sorry. We're right into that. That one. The one right in front of you. Okay. That bar. The Prison Justice League is a 501c3 nonprofit organization represented by the IRS, and it has a board and staff on one hand who are not members. They administer the organization. But on the other hand, it is a membership-based organization like many others, like the NRA, for instance. Right. And its members, according to its bylaws, its membership is limited to people who are currently incarcerated in a Texas prison. Okay. They're prisoners. Correct. Okay. So at the time of filing the lawsuit, there were 700 members, 100 of whom were in the particular prison that we're dealing with in this case. Yeah. So I apologize. I got lost somewhere in my last answer. Well, you were going to get to your second point if we're not convinced by your first one. Okay. The question is how do you predict the future? How do you predict what people are going to do in the future? And Farmer v. Brennan, for instance, reviewed that to some degree by, of course, looking at what's happened in the past. But that doesn't mean that you have to look at what's happened in the past with regard to the particular people who are bringing the claim. The Prison Justice League has 100 members at the Estelle unit. That's a unit that has the capacity to hold just north of 3,000 people. So if we're operating at full capacity, you'd be talking about roughly 3% of the total population. I would argue that there's nothing to stop those 100 people from drawing on evidence from other inmates' experience immediately before them and around them to establish that, because of the systemic practices to which the warden of the unit is deliberately indifferent, they are all at risk. I mean, it may be a game of Russian roulette, but they're all looking down the barrel of the same gun. So even if it does require individual inquiry, going back to the actual test for associational standing, it doesn't require the significant individual participation of the association's members. What does participation, in your view, in the lawsuit mean exactly? If you sue and you have membership of the prisoners, essentially, then what you're asking, you're suing for injunctive relief to reform, stop these practices, et cetera. Then the prisoner's role in this is basically testifying to various experiences, et cetera, for the purposes of establishing a pattern or practice that's there. Is that essentially what you're trying to do or not? I'm trying to think of the best way to answer the question. I'm not sure I can answer it exactly with a yes or no. The beginning of your question was what I regard as participation. That's an explanation for what I'm trying to get to. We're talking about associational requirements and requiring participation in terms of someone that you have difficulty with, people that require individualized determination, et cetera. But if your relief that you seek is injunctions to reform this rather than specific relief for a John Doe prisoner who was abused, then their, quote, participation is essentially witnesses to what's there in an effort to establish a basis for injunctive reform relief. That's classic. That's a very straightforward reform suit. We see those all the time. I'm trying to get at what the hang-up here is about associational standing and why we're talking in those terms rather than this is a suit for injunction against this prison system because they're engaging in a consistent pattern and da-da-da-da-da. Or is it that you seek relief for individual persons? The association filed the lawsuit on behalf of its members. I think that each of those individuals. Yes, but is what you seek on behalf of the members individual relief, or is it injunctive relief? It's injunctive relief. To reform the prison system. It's injunctive relief with respect to systemic practices on the prison unit. Now, it may be that any individual in the prison might have standing for broader injunctive relief depending on their particular circumstances, but I think all of the members of this association certainly, and probably everyone in the unit, has standing with regard to the systemic practices that apply to everyone which are a result of the way the warden is running the prison, which is running it with the liberty and justice. I can tell you the association may well have standing itself depending for those types of relief itself because your entire membership is what you're proceeding on behalf of, not individualized. You're not here on behalf of individuals. I think part of what you may be getting to is the standing of the members, which is a separate element, but under this circuit's case law, the NRA versus ATF, which is a 2012 case, only one member of the association needs to have immediate standing to bring the claims. The question before us, though, is whether in order for the association to achieve the relief that it's seeking, whether or not it works. I'm sorry. Did you say what? I couldn't follow what you said. You swallowed your words. I'm sorry. You were speaking with respect to standing, and I was pointing out that the standing of the members of the association, I mean it's a separate element and there is case law to the effect that only one person needs to have standing for the association itself to satisfy that element, which I believe is the first element of the test. If you just filed a straightforward class action on behalf of prisoners that are seeking junctive relief, you wouldn't be in this problem because then your class representative dies  and you don't have to. So it's a different problem. But you're seeking a different type. As an association engaged in a form of representativeness, that's why I asked at the outset who membership was, and your members are actually the prisoners themselves. Correct. I mean this association, well, again, I'm wary of a yes or no answer. Associational standing is a different vehicle than class action. Of course it is. I'm sorry. We're not on the same wavelength. I'm sorry if I'm misunderstanding. Go ahead. I mean it could be that the inmates here, if they had organized around class action, wouldn't be facing the same logistical obstacles. I mean in this instance, it's the association that chose to file the lawsuit, relying on its standing by virtue of having members who . . . Well, you could file the lawsuit and file it as a class action. I mean as an association, you can file the law. In other words, you're responsible for litigation and so forth. And you have prisoners there that could be class members, and you can pick one of them and you go forward. But you didn't do that. You wanted to go through this business of an association, which requires you to examine membership and create . . . I'm just understanding why we're going down this path. I mean I think that was probably the . . . I mean that was the same choice facing the members of the Association of American Physicians who decided to file a lawsuit as an association rather than as a class action, or the Pennsylvania Psychiatric Society. But the problem for you is you have to be able to demonstrate that you can get to proof of the use of excessive force without some individualized, fact-driven determination about whether or not excessive force was used. Don't you have to have that in order to prevail on these claims and to go forward on the claims? We certainly don't need an individualized determination on behalf of all of the members of the association, or any more than a sample of the members of the association, which is the legal standard in the circuit. It does require predicting the future. I mean it's important at this juncture not to conflate standing with the resolution of the case on the merits, although I'll grant you that they bear some resemblance. But there are plenty of parties that have standing to bring claims, which perhaps in summary judgment or a trial they're not successful with. And I mean it does require predicting the future. But going back to the legal standard, whether or not it requires a significant individual participation of PJLs. Well, you mentioned the case of the Association of American Physicians. Didn't that case say you've got to be able to establish a standing without a fact-intensive individual inquiry with the participation of those individual members? And you're saying in order to have associational standing you've got to be able to do that. Your contention is you can do that on an excessive force claim without that kind of testimony or information? I think there are some examples of excessive force that are more clear than others. I mean if you assume a hypothetical with me, for instance, where officers periodically and predictably formed a gauntlet that inmates had to walk through, in which they would be beaten when they passed through. That's not the allegation in this claim, but that is something that you could look at from the outside that would clearly have been a violation of the Eighth Amendment. And I feel that in other extreme examples you can look to documentary evidence initially and relying on some witnesses if necessary, but certainly not more than a sample of the membership involved, perhaps other witnesses who are not members. But with that respect, establish that there is a systemic practice of using force that grossly exceeds what's necessary to maintain discipline. And it may be that once we develop the evidence it's not adequate to pass muster on summary judgment. It could be that the association would be dismissed on summary judgment. But looking at it from the basis of the plaintiffs, I believe that we've established a plausible basis for believing that it could be accomplished without intensive review of the individual claims. And I apologize that I've gone over my time. All right. Thank you, counsel. Ms. Warren. You may proceed. May it please the Court. This Court should affirm the dismissal of the Prison Justice League claims because the Prison Justice League does not have standing to bring these claims that would require the individual participation of its members. Let me pick you up. I think that's a given. That is the principle of the law. The principle says you can't assert associational standing only after showing that the nature of the case does not require the participation, what participation, of the individual affected members, the prisoners here, as plaintiffs to resolve the claims or prayers for relief at issue. Does that mean that they can participate as witnesses? Your Honor, I believe you're talking about the Association of American Physicians and Surgeons where this Court explained that you have to look at the claims asserted and the relief requested. That quote is from Friends of American Free Enterprise v. Walmart. Yes, Your Honor. And the individual participation that we're looking at here is similar to common proof in a class action. Would you need to have individualized inquiries into the facts of each case to prove up the underlying use of force claims that the Prison Justice League is relying on to say that Warden Bailey was deliberately indifferent to a systemic problem in her unit? Well, as I read what they're talking about, they contemplate evidence of participation by prisoners in the sense that they may be witnesses, correct? That could be part of it. Yes, Your Honor. But then the qualification to that is that their participation will not require fact-intensive individual inquiry, and I'm not sure how that operates. If your claim is that there is a systemic – the culture that's created by the system itself is to promote this kind and creates this kind of violence, then the way you would prove that, of course, would be by showing the stats and numbers of injuries and so forth and with testimony about some of the prisoners themselves. So I'm trying to understand what the – you say, well, no, now you move to say, well, the nature of these claims is going to require individualized determination. That is that excessive force is not – can be systemic because it all turns on a particular circumstance. Your Honor, in this case, because there is that underlying excessive use of force claim, which is a fact-intensive inquiry, as the Supreme Court laid out in Hudson v. McMillan, there are certain factors that have to be examined, and they have to be examined on a case-by-case basis. That's where that individualized participation comes in, because you have to look at why force was used, how much force was used. When you say case-by-case, you mean individual inmate by individual inmate. Yes. Pardon me, Your Honor. Individual inmate by individual inmate. In order to prove that overlying claim of deliberate indifference, to prove Warden Bailey was deliberately indifferent, we have to know what she was deliberately indifferent to. The PJL has asserted that in this case it was uses of force against the Prison Justice League. And so given that claim and given the standard for that claim asserted by the Supreme Court in Hudson v. McMillan, specifically the most important inquiry in a use-of-force case, whether or not the officers acted maliciously and sadistically to cause harm or in a good-faith effort to maintain order. What if there were a written policy or just a custom and practice to use force on entry of every blind or disabled person? Why would you need any inquiry at all into individual conduct? That would be a classic case of a policy, you just looking at the defendant's conduct. Your Honor, if there was a written policy and a practice of when a disabled inmate comes in and then officers then are supposed to use force against them automatically for no reason, that would be a case, that would be a different case than what we have here. I know, but the amended complaint, paragraphs 33 to 43, and then the relief request, urge that. They say they were aware of excessive force and Warden Bailey acquiesced. So they're alleging it, arguably. And therefore, here's the question, why don't the cases they cite, the Third Circuit Green Spring case, the Eleventh Circuit Barrero case, say we don't decide this at this stage? It's premature. We just don't know if a policy like that that would allow focus just on the defendant's conduct, only for injunctive relief, in which case I think you're just agreeing with me, it would be appropriate to recognize associational standing. We don't know that. Your Honor, respectfully, I disagree. Well, but you did just say if there were a policy where you only looked at the defendant's or you shackled them or whatever. You just said that would be a different case. You might have associational standing. Your Honor, this case is different from the Eleventh Circuit cases because of the standard and the inquiry that this Court requires itself to look at when you consider an associational standing case, and that's the nature of the claims asserted and the relief requested. Now I'm confused. So if we were in the Eleventh Circuit, they would have standing? No, Your Honor. The cases cited by the appellant in the briefs are wholly different than a use-of-force analysis. The Barrero case was an ERISA claim. But I'm asking you to assume hypothetical – if I read the amended complaint to allege a pure defendant conduct only, they've got a policy, I understood you'd answer, and it's my view of the law too, then associational standing would be appropriate. If they're just saying stop that looking forward. My question to you is looking at the Eleventh Circuit and especially the Third Circuit Greenspring, we just don't know that. So the case law is saying don't make these decisions denying standing at the front end before they have discovery about what the character of the use-of-force violation is. Your Honor, we do have that evidence, and it's on page 81 of the record in the amended complaint. It's the four examples provided by the Prison Justice League when the Prison Justice League asserts that a representative sample might be used in this case instead of individual participation of each of the members. If you look at those four examples, two are de minimis uses of force. In none of these cases do we know who the officers were who allegedly used excessive force. We don't know the reason force was used. We have no idea about the relationship between the force used and the reason for using force. And we have absolutely no insight into the subjective intent of those officers. We don't know whether or not they acted maliciously and sadistically solely to cause harm or whether they had a good faith belief. What do we do two pages later in the complaint? Bold heading TDCJ leadership is aware of the endemic violence in the Estelle unit. Your Honor, I believe that was in relation to Warden Bailey's deliberate the claim against Warden Bailey for deliberate indifference. Your Honor, Warden Bailey is no longer the warden at the Estelle unit. And even if she was, we are still having to assess these underlying excessive use of force claims. As the Blyden v. Mascuzzi case that the appellant cite says, in order to find that there has been deliberate indifference, you have to first establish that there has been an underlying constitutional violation. And the appellant and the plaintiffs of the trial court cannot prove the underlying constitutional violation on 100 plus members of the Prison Justice League in order to establish deliberate indifference. It's just not possible in this context with the underlying use of force claim. I suppose the allegations were that the prison system was not providing adequate medical care for the prisoners, that they routinely had practical nurses at the highest level of medical care, and they have instances of a whole number of people who have had difficulties, et cetera, et cetera. In other words, the allegation attacks its practice and the order of staffing, inadequate staffing and inadequate utilization. And the only way you can prove some of that is by dealing with some instances where people weren't referred out. I'm not sure where this participation line is drawn about individualized determination. If the association ought plainly to have standing to attack systemic violations, you would agree with that, I guess. If there were systemic violations, they could allege them and have standing to do so, I presume, given their membership. Your Honor, it would depend on the violation asserted. In this case... I would suggest to you if they're alleging systemic violations, not individualized determination, that's my difficulty with this, the way we're spinning the question of individualized participation of members. The core basis of associational standing is that the association really is so unified in a particular message that they speak for its members itself, and there's that commonality of interest. And so it insists that if you're going to go forward, you're not going to have to rely upon distinct and individualized claims that are there. Instead, you're going to identify it's going to be a relief that all experience it. Yes, Your Honor. And that's the difficulty of trying to apply these standards in a prison context. I think the question of participation is quite awkward because you're attacking a systemic violation that prison policies, the internal memoranda, the instructions of the nursing staff, all those kinds of things that may lead to proof that they're not adequate care. That is a deliberate indifference, if you have a consequence. That their policy supports a policy that is itself deliberately indifferent, not with regard to the individuals. If you say that there's no standing itself because you don't have to have testimony from individuals, then I don't know how you prove those things. Your Honor, you would have to have testimony from individuals. You would have to have participation of those members because these are very— If you forbid the use of testimony of individuals because it is a, quote, individualized determination, how do you prove those unless you just find written policies out there? Well, Your Honor, I think that's why this— that's why standing is assessed at the beginning of a case so that you don't run into that problem because you can't bar these prisoners from testifying if this case were to go forward, but then we would be putting the district court in the position of having to try these individual cases under the guise of an associational standing case because in order to fashion relief that's consistent— We'll be trying the question of whether or not there is a policy or a custom of the prison itself to engage in this kind of conduct. And he would consider the history of the administration of their policies and determine what a policy is. You do that in prison litigation because the basic limitations of no vicarious liability under 1983, you have to show that they are the moving force. And so you've got the policies that are there, and we do that all the time. And, Your Honor, the policy, the use-of-force policy in place at the Estelle unit is the same use-of-force policy that was approved by this Court in the Ruiz litigation when the Court reviewed that use-of-force policy and found that it was consistent with the Eighth Amendment, that it was not violative of the Eighth Amendment. So a blanket injunction saying no uses of force at the Estelle unit or no excessive uses of force at the Estelle unit would— Well, I understand that. Your argument is that there's no basis for such because there is no such policy. We're not—that may well be true. But the argument that there are issues here is whether one can even go forward to demonstrate whether there is or is not such a policy. No, Your Honor, not in this case because it would require that individualized proof. I understand. It's a bit—it is at this early stage. I mean, obviously the complaint is laced through also with suggestions that these inmates, once they complain, grieve internally, then they're retaliated against, making it even less likely that individually these facts will become apparent. It almost makes the argument for associational standing more compelling in this prison context if the individuals can't complain because as soon as they do, the retaliation occurs that they allege. Your Honor, as far as the grievances are concerned, we are not saying that in this case we would have to look and see whether or not each and every one of the inmates who is part of the Prison Justice League exhausted those administrative remedies. That's not a consideration that has to be made in an excessive use of force case. But we don't even get to the retaliation claims because the underlying claim here, the basis for this litigation, is that excessive use of force claim. And there is no way to craft relief that is consistent with the Prison Litigation Reform Act, which states that relief has to be narrowly tailored. You can't narrowly tailor relief in associational standing cases where you have a use of force claim. What prisoners are in this Estelle unit? What is the—violent ones or what gets you in that particular unit? Your Honor, there is a—the assignment to a unit is somewhat random, and depending on where— This seems to be a distinctive unit. Who goes into the Estelle unit? There are—they do have a more advanced medical unit, so there are some older patients, some disabled patients. It's not an entirely—it's not considered a geriatric prison. It's considered to be an advanced medical unit. If you're blind, do you go into that unit? You might go to that unit, yes. And—but in this case, we don't know whether this injunction would just be for the 100 members who are alleged by the Prison Justice League to have these disabilities or whether it would apply to the prison as a whole because that is unclear from the amended complaint, what relief is actually requested. And consistent—to be consistent with the PLRA, the Prison Litigation Reform Act, relief has to be narrowly tailored. And no injunction could issue in this case that would be narrowly tailored to the issues that each of these inmates is asserting underlying these claims. There is no way to redress these uses of force with each particular inmate. An injunction would simply restate the Eighth Amendment constitutional law and TDCJ policy that excessive use of force is unconstitutional, which would effectively do nothing to redress these prisoners' needs if they do so in fact exist. And that is why when we look at the relief requested in this case, it would also require individualized proof and a fact-specific inquiry. You would have to look at which officers were asserting force over which inmates and whether or not maybe a narrow injunction against one officer when it comes to one inmate would redress that problem. Because of this individualized proof that is required to prove the claims asserted and the relief requested, the Prison Justice League does not have standing to bring these claims on behalf of its members. And that's why this Court should affirm the ruling of the District Court and uphold the dismissal of the complaint. And if there are no more questions, I will yield. Thank you, Counsel. Rebuttal. With regard to the delineation between a sample of the members of the Association and significant individual participation, because I think that delineation is critical here, I think there's a useful phrase in the case law from Alliance for Open Society International, which is also cited in the briefing. It's a Second Circuit case. That phrase is duplicative and redundant. It's a case in which the Court was looking at whether a policy requiring nonprofits receiving certain federal funds would be required to adopt a particular policy with regard to anti-prostitution. And the factual question was whether these individual nonprofits had adequate alternative channels for protected expression. A convoluted First Amendment case. In that case, the Court said, yes, you might require some testimony from some of the individual members of this Association, but it wouldn't even make sense for the trial court to permit every member of the Association to testify because that evidence would quickly become duplicative and redundant. The critical thing in that case was that the critical facts were demonstrated by looking to the defendant's conduct. So, I mean, in looking at that delineation, I think it's important not to lose sight of that component. Your Honor, to your point, I agree. Well, my position would be exactly what you articulated, that at this point it's premature to say that there is not a practice of using force that is so obvious and systemic and egregious. Did you ever allege in your complaint a systemic policy denying medical care? Do you even use the phrase deliberate indifference anywhere in the complaint? Certainly not medical care. Did you even use the phrase deliberate indifference? I honestly don't recall. I believe that with... Because when I look at the end, especially, it's very particularized. John Doe requests the Court enjoin them from returning him to the Estelle unit, even as to injunctive relief. That's his situation. I mean, I think... I mean, I think we've discussed a lot. If you were to have alleged systemic violations with a policy and a custom and practice denying medical care or a pawn entry, then Associate's standing seems fairly compelling. Maybe opposing counsel seemed to acquiesce somewhat in that. But looking at your allegations, they look really particularized. Well, not only that. You cite Farmer v. Brennan, the 94 decision, and that's not a deliberate indifference claim, but it's an intentional tort claim in itself, that prison guards routinely and deliberately use excessive force. But Farmer says application of the deliberate indifference standard is inappropriate in one class of prison cases when officials stand accused of using excessive force. So not only are your allegations that don't support that, you go to a lot of cases in Farmer which are plainly against you. I think Farmer v. Brennan was a deliberate indifference case. I'm sorry. It was a deliberate indifference case. The question was whether or not the defendant in that case could be held liable for being deliberately indifferent to harm posed by a third person of which they're subjectively aware. The Supreme Court has not, but other courts have said that the same standard as Farmer v. Brennan, which Farmer v. Brennan applied to other inmates, can be applied to supervisors who are deliberately indifferent to their subordinate officers' inevitable use of excessive force, including Blyden v. Mancusi from the Second Circuit and Curry v. Scott from the Sixth Circuit. It is a deliberate indifference. You just back away from this for a moment. As an association, you simply can't go out there and pursue claims on behalf of individual members of your claim. You can do what is common to all the membership. So there are two different strands here, and everything you're telling us really speaks to vindicating the rights of individual focus on individuals, and that's quite plainly not associational standards because there's not that community of interest that's there. In retrospect, it's regrettable that it may be that combining the individual with the association does to some degree muddy the distinction between their claims. We live in the retrospect world here. I would argue that the appropriate course of action would be to look at the allegations. When you look at the actual pleading notice standard coupled with the briefing that has been presented to this Court. I'm not fussing at you, and I respect your work, and I respect what the League is doing. I'm just saying to you that there is the law, and it's pretty plain. There is. And if on remand, when the Prison Justice League is standing on its own and files its inevitable amended complaint excluding the individual claims of Mr. Doe, it may be that at that juncture the claims would be vulnerable to a 12B6 motion. I don't believe that they would be, but procedurally that would be the next step here. The fact that it may not succeed doesn't mean that the allegations as they stand today doesn't mean that the association doesn't have standing to even bring a claim and to have it stay in court.